IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:10-CR-30175-DWD |
| | ) |
| JEFFREY ANDERSON, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

Now before the Court is a Second Motion for Hearing by *pro se* Defendant Jeffrey A. Anderson regarding an exemption from a writ of post-judgment execution. (Doc. 119). The United States filed a Memorandum in Opposition (Doc. 122). On February 4, 2025, the Court held a hearing on the motion. (Doc. 125).

### Background

In December 2010, Mr. Anderson plead guilty to conspiracy to sell stolen vehicles in violation of 18 U.S.C. §§ 2313 and 371. (Docs. 1, 6). His charge arose out of his involvement in a scheme to sell stolen vehicles between 2007 and 2009. (Doc. 7). In that scheme, Mr. Anderson received stolen vehicles from Ronald Schweppe, sold the vehicles below market value to buyers in Illinois, and shared the proceeds with Schweppe. (Doc. 7). Mr. Anderson received a sentence of 20 months' imprisonment and restitution and a special assessment totaling $251,323.82. (Doc. 48). As of January 3, 2025, Mr. Anderson's restitution debt balance was $219,507.26. (Doc. 122, pp. 1-2).

According to the Government, an asset investigator working for the Financial

Litigation Unit in the U.S. Attorney's Office identified a 2016 BMW Sport Utility Vehicle (the "BMW") at Mr. Anderson's home in mid-2024. (Doc. 122, p. 2). The registered owner was identified as an individual residing in Wood River, Illinois, Suzanne M. Eberhart. (*Id.*). Ms. Eberhart informed the asset investigator that Mr. Anderson purchased the BMW from her. (*Id.*) The United States then obtained a copy of the handwritten bill of sale from March 14, 2024, identifying the vehicle and the $14,000 purchase price. (*Id.*). Mr. Anderson's name, address, phone number, and signature were located on the bill of sale under the heading "Buyer." (*Id.*).

On August 23, 2024, the United States applied for a writ of execution against the BMW, and the Clerk issued the writ and a notice the following day. (Docs. 111, 112). On November 18, 2024, the U.S. Marshal levied execution on the BMW and provided written notice to Mr. Anderson, along with copies of the application for writ, writ of execution, and notice of exemptions.

On December 4, 2024, a request for hearing on the post-judgment writ of execution was filed. (Doc. 116). The Court denied the request because it was not signed by Mr. Anderson and only contained the signatures of Daisjah Love and Felisha Moore, did not assert an exemption, and was untimely. (Doc. 118).

Then, on December 11, 2024, Anderson filed a Motion for Reconsideration of the Order denying the request for a hearing. (Doc. 119). As it included new information, the Court construed it as a Second Motion for a Hearing and granted the same. (Doc. 121).

## Legal Standards

"[T]he Mandatory Victims Restitution Act . . . permits courts to enforce restitution orders using the same practices and procedures for the enforcement of a 'civil judgment' under federal or state law." *United States v. Lee*, 659 F.3d 619, 620 (7th Cir. 2011) (citing 18 U.S.C. § 3613(a) ("MVRA")); *see also United States v. Sayyed*, 862 F.3d 615, 618 (7th Cir. 2017). Upon entry of judgment, "[a]n order for payment of restitution becomes a lien on all property and rights to property of the defendant." *United States v. Kollintzas*, 501 F.3d 796, 802 (7th Cir. 2007) (citing 18 U.S.C. § 3613(c)). "Liens to pay restitution debts are treated like tax liens ... [and] are 'effective against every interest in property accorded a taxpayer by state law.' " *United States v. Miller*, 39 F.4th 844, 846 (C.A.7 (Ill.), 2022). Upon entry of the judgment, the order for payment of restitution became a lien in favor of the government on all of Anderson's property and rights to property. See 18 U.S.C. § 3613(c)

The MVRA is a "procedural mechanism by which the government collects debts," not "a statute that redefines property rights." *United States v. Swenson*, 971 F.3d 977, 984 (9th Cir. 2020). Likewise, the Federal Debt Collection Practices Act provides "the exclusive civil procedures for the United States . . . to recover a judgment on a debt." 28 U.S.C. § 3001. The FDCPA provides that a Court, upon application from the Government, may issue a writ of execution for property of a judgment debtor. Id. at § 3202(c). All property in which the judgment debtor "has a substantial nonexempt interest" can be levied under a writ of execution. Id. at § 3203(a). Property which is co-owned can subject to execution to the same extent as would be allowable under state law. *Id.* In either case, courts "look

initially to state law" to determine a defendant's property rights. *See United States v. Henricks*, 886 F.3d 618, 625 (7th Cir. 2018). "State law is used only to determine the parties' property rights, and federal law is applied to determine whether the property could be liquidated for restitution payments." *Id. Here,* Illinois law is to be applied to determine existing any interests Anderson may have in the BMW.

Illinois courts have been consistent in finding that there exists "[a] *prima facie* presumption of ownership [that] arises from a certificate of title," which "may be rebutted by competent evidence of actual ownership." *Pekin Ins. Co. v U.S. Credit Funding*, 156 Ill.Dec. 789, 571 N.E.2d at 771 (citing *Klein v. Pritikin*, 6 Ill.App.3d 323, 285 N.E.2d 457, 460 (1972)). Although not "conclusive" evidence, because "one can own an automobile though the certificate of title is in the name of another," a certificate of title is still "*evidence of title.*" *Id.* (quoting *State Farm Mut. Auto. Ins. v. Lucas*, 50 Ill.App.3d 894, 8 Ill.Dec. 867, 365 N.E.2d 1329, 1332 (1977)).

## Discussion

Anderson claims that he "had no financial interest or involvement with the purchase of this vehicle," and that it belongs to Daisjah Love. (Doc. 119, p. 2). He states that he located and negotiated the purchase of the BMW on behalf of Love and that the BMW belongs to her. (*Id.* at 1-2). He claims that Ms. Love gave him $500 to use as a down payment and that he paid for the BMW with $7,000 from the sale of Love's previous vehicle along with other money from Love and her mother. (*Id.*). He attached to his motion an "official bill of sale" which lists the buyer as Love. (*Id.* at 4). Ms. Love also provided an affidavit attached to the motion that claims that "Jeff Anderson had no

4

financial involvement with the purchase of the case. His sole purpose was to locate, check out and negotiate the price of the car." (*Id.* at 6).

The Government argues that, although the request for a hearing was timely, Anderson failed to assert an applicable exemption warranting a hearing—*i.e.* the validity of asserted exemptions, compliance with statutory requirements, and the validity of certain default judgments. (Doc. 122, pp. 4-5). *See United States v. Bankas*, 717 F. App'x 637, 638 (7th Cir. 2018) (noting that "3202(d) permits a hearing only on limited grounds"). The Government also claims that Anderson lacks standing to assert a third party's ownership interest to the BMW. (*Id.* at 5-6). Instead, the Government contends that Love must challenge the writ of execution in her own name. (*Id.* at 6).

At the hearing, evidence was presented that Suzanne Eberhardt (Eberhardt) had posted for sale in a trader publication a motor vehicle, a BMW. Anderson contacted Eberhardt and arrangements were made for him to test drive the vehicle, following which, Anderson agreed to purchase it for the sum of $14,000.00. Anderson came alone for the test drive. Anderson paid to Eberhardt $500.00 as a "down payment" and drafted in his own hand a document he entitled "Bill of Sale Down Payment Receipt". (Gov't Exh. 1) That document bears the date of March 14, 2024 and reflects that Anderson is the buyer. Each party's signature appears on that document.

Approximately two weeks later, Anderson arranged to meet with Eberhardt to conclude the purchase of the BMW. The delay, according to his texts to Eberhardt, was

due to his need to secure transfer of funds from his "wealth management" account.[1] At their second meeting, Anderson paid the balance owed, by handing to Eberhardt the sum of $13,500.00 in cash. (Doc. 126, p.7). Because there existed a lien on the BMW in favor of a credit union, the parties travelled to branch location to attain a release of the lien and complete the transaction. Anderson drove the BMW to the credit union. The Certificate of Title with the lien released by the credit union was then signed by Eberhardt and delivered to Anderson. (Gov't Exh. 4). According to Eberhardt, Anderson, accompanied by a Daisjah Love, drove the vehicle away. At some point thereafter, the Certificate of Title was completed and signed but the "buyer" who is identified as Love, not Anderson. Related to this is a "Notice of Sale" (Gov't Exh. 3). That document appears to be a State of Illinois form that memorializes a transfer of title. The "Notice of Sale" form contains in bold letters an admonition that it is to be completed by the seller. However, the "Notice of Sale" was completed by Anderson and does not bear the actual signature of Eberhardt. (Doc. 126, P. 10)

The BMW, according to Anderson, was parked for a period of time outside his home that he owned on Glan Tai Drive, Manchester, Missouri before the United States Marshalls seized it on November 18, 2024. Shortly after the seizure, Anderson began texting Eberhardt explaining that he had a "tax lien" from 2012 and that the car had been seized as a result. He encouraged Eberhardt to recall that, in their prior conversations,

---

[1] This differs from his testimony at hearing where he attributed the delay to his stalling of the sale until Love's received her paycheck. (Doc. 126, P.11)

Anderson told her that the car was for his "daughter and her little girl." [2] In a text dated April 8, 2024, Anderson then asked Eberhardt to create a new bill of sale with Love as the buyer and, if she would be willing to do so, have it accomplished in a few days to prevent losing the car to the government. (Gov't Exh. 5)

For Anderson's part, he elicited testimony from Eberhardt that he had made it clear to her that the BMW was for Love and that she reviewed the vehicle with Love on the day of the sale. (Doc. 126, P. 28-29) However, Eberhardt could not say that the vehicle was titled in Love's name because she was not present for the signing of the title for any purchaser. (Doc. 26, P.30-31)

Love was called to testify by Anderson. She related that she had saved money from her work at WalMart and as a home health care provider and from the sale of another vehicle to her brother. (Doc. 126, P. 32-33) She said she had been saving in her closet at least a part of the $13,500.00 cash she gave to Anderson to purchase the car. (Doc. 126, P. 36).

Love's parents, Marcus Love and Felica Moore each testified that Felica Moore had provided money to Love to purchase a car the prior year and that those funds were used toward the purchase of the BMW. Each also testified that it was never the intent of anyone that Anderson have a financial interest in the BMW.

Anderson's Failure to Select an Exemption and Standing:

The government argues that Anderson failed to check any exemption box on the

---

[2] The assertion in the text that Love was his daughter was not true in that Love is the mother of his child. (Doc. 126, 11-12)

7

request for hearing and, his failure to do so is fatal to his claim as well as any consideration of Love's interest in the vehicle. In support of this argument the government points to 28 U.S.C. §1302(d) for the proposition that the Court's inquiry is sharply limited to the validity of any asserted exemptions. In conjunction with this argument, the government also suggests that Anderson lacks standing to assert any property rights that Love may have in the BMW.

While it's true that there appears to be no mechanism for Anderson to protect the rights of Love relative to the car, inherent is the question whether Anderson himself ever had an ownership interest in the BMW because MRVA and the FDCPA both presuppose that the debtor *asserts* and not rejects an interest in the vehicle. Further, an order of restitution is a lien only on the property interest of the debtor himself. See 18 USCA §3613(c). In essence, the government is asking this court to ignore the question of whether Anderson has any interest in the same vehicle the government knows is titled in Love's name and in which she solely claims ownership. The court believes inquiry into Anderson's interest, if any, is proper.

Anderson's Interest in the BMW:

There are those rare cases, where in Illinois the title is not viewed as King and the Court is permitted to look behind a troubled title for practical approaches to ownership questions. See *United States v. Miller*, 39 F.4th 844, 850 (7th Cir. 2022). Certainly, the title to the BMW is cast into some level of doubt by the events leading up to and following the sale. However, when viewed as whole, the Court does not believe that evidence shows

8

that Anderson owns or ever owned an interest in the BMW. Still, the questionable aspects of the title deserve discussion.

The Bill of Sale, written by Anderson himself declares him to be the "buyer" of the BMW. He involved himself in all the typical or customary communications relative to negotiating for and entering into a purchase agreement. Beyond dispute is that he handed both the down payment and the final payment to Eberhardt. With the sale concluded he drove the car away.  But Love says she paid Anderson the money to buy the car for her, and her parents in their testimony agreed that Anderson was acting on behalf of Love in conducting a purchase of the BMW. It is not implausible that a friend or family member with knowledge of automobiles would assist a younger, less knowledgeable individual in locating and buying a vehicle. At the same time, the Court recognizes that the sourcing of that money is vague and unsupported by any substantive documentation. But those things do not rise in this case to the level requiring a finding that the purchase by Love was a ruse or that Anderson is the surreptitious owner.

Still, troubling is that when Anderson learned that the United States was attempting to enforce a lien against the vehicle, he immediately invited the seller to prepare a new bill of sale depicting Love as the buyer in an apparent effort to avoid the lien. On its face, such behavior certainly would suggest a clandestine intent to remove any appearance of Anderson's legal interest in the BMW. The nature of Anderson's conviction would tend to support such an observation. At the same time, it must be recalled that Anderson went alone to test drive the vehicle and the decision to purchase it was made after a "Face-time" call to Love to obtain her approval of the purchase. To

9

secure the vehicle's purchase, Anderson drafted a Bill of Sale which he signed as buyer. He may have had the intent to purchase the BMW for himself but at the same time his actions are not necessarily inconsistent with his stated plan that the car was for "his daughter and little girl."

In the end, there exists a Certificate of Title of a Vehicle bearing the signatures of the seller, Eberhardt, and the apparent buyer, Daisjah Love. (Gov't Exh. 4). Illinois defines a vehicle "owner" as "a person who holds legal document of ownership of a vehicle," including a certificate of title. 625 ILCS 5/3–100 (West 2014); *Nudi Auto RV & Boat Sales, Inc.*, 328 Ill. App. 3d at 535. A certificate of title to an automobile is evidence of legal title. *Id.* A prima facie presumption of ownership arises from a certificate of title, and this presumption may be rebutted by competent evidence of actual ownership. *Pekin Insurance Co. v. U.S. Credit Funding, Ltd.*, 212 Ill. App. 3d 673, 677 (1991).

Here there is insufficient rebuttal evidence that the Certificate of Title did not vest actual ownership in Love.[3] Based upon the evidence presented in this matter, the Court cannot find that the Defendant Anderson held any ownership interest or other substantial nonexempt interest in the BMW2016 WHITE BMW UTILITY VIN: WBXHT3Z36G4A51469 such that it is subject to the lien otherwise created by reason of the judgment for restitution.

Accordingly, the Writ of Execution (Doc. 113) entered on August 23, 2024, is hereby **QUASHED.**

---

[3] Once Anderson requested a hearing, the Government was made aware that Love claimed ownership interest in the vehicle and could have joined her under 28 U.S.C. §3012 at which time her interest in the vehicle might be determined. Without her as a "party", the court cannot assess her actual interest in the vehicle.

The Unites States Attorney is directed to notify the U.S. Marshals of the contents of this Order.

IT IS SO ORDERED

Dated: May 16, 2025

/s *David W. Dugan*
DAVID W. DUGAN
U.S. District Judge
